IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| ANDRES HUERAMO, | ) | Case No. 16-32350 |
| | ) | |
| Debtor. | ) | Hon. Judge Deborah L. Thorne |

## MEMORANDUM OPINION

Andres Hueramo ("Debtor") is attempting to save his home (the "Residence") through confirmation of a chapter 13 plan. Both the Debtor and the lender, Byline Bank agree that the Residence's value is far less than the remaining balance owed to Byline. Debtor has asked this court to determine the value of the Residence, through the adversary case and through his proposed plan, to modify Byline's secured claim. Byline has filed a motion to modify the automatic stay and has objected to the proposed plan.

For the reasons stated below, the court holds that the Debtor's attempt to defeat the prohibition against modification of the secured claim on the Residence is not authorized under the Bankruptcy Code. Both the Debtor and Byline agree that there is no equity in the Residence if the secured claim is not reduced and for this reason, the motion to modify the automatic stay is granted.

### A.    Jurisdiction

The court has subject matter jurisdiction to decide this matter under 28 U.S.C. § 1334(b) and the Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. A motion to modify the automatic stay under section 362 and plan confirmation are core proceedings under 28 U.S.C. § 157(b)(2)(A), (G) and (O).

### B. Background & Procedural History

The Debtor is a co-owner with his wife of the Residence located at 2503 S. 57th Court, Cicero, Illinois 60804. Debtor previously had an interest in an investment commercial property located at 2346 S. Central Avenue, Cicero, Illinois 60604 (the "Commercial Property"). The note held by Byline[1] was originally secured by both the Residence and the Commercial Property. Prepetition, the Commercial Property was foreclosed upon by Byline or sold and is no longer collateral for the Byline note. The loan secured by the Residence matured on December 22, 2013 and Byline proceeded with a state court foreclosure. On August 13, 2015, the state court entered a Judgment of Foreclosure and Sale in the amount of $392,810.49. Debtor's right to redemption expired on November 13, 2015 and a judicial sale was scheduled.

On October 11, 2016, the date scheduled for the judicial sale, Debtor filed for relief under chapter 13. The Debtor has proposed a chapter 13 plan which modifies the secured claim of Byline to $140,000[2] and proposes to pay the secured portion of the claim with a balloon payment during the last month of the plan. Byline filed a motion to modify the stay and objects to the proposed plan for a number of reasons, including that the plan violates the anti-modification prohibition of section 1322(b)(2) of the Bankruptcy Code and further that the payments to be made to Byline are not regular, equal monthly payments as required under section 1325(a)(5)((B)(iii)(1).

---

[1] The loan was originated by Metropolitan Bank and Trust on December 22, 2006. Dkt.27 Ex. A. Metropolitan Bank and Trust subsequently merged with Chicago Community Bank, Community Bank of DuPage and Citizens Bank of Illinois to continue under the charter of Citizens Community Bank of Illinois. Dkt. 27 Ex.B. Chicago Community Bank changed its name to Metrobank. Dkt.27 Ex. B. Metrobank subsequently merged with Archer Bank, North Community Bank, Plaza Bank, and Oswego Community Bank and continued under the charter of North Community Bank. Dkt. 27 Ex. C. On February 17, 2015, North Community Bank changed its name to Byline Bank. Dkt. 27 Ex. D.

[2] Byline contends that the Residence should be valued at $140,000. Case No. 16ap00644, Dkt. 5 Ex. C. Debtor is apparently not disputing this value and proposes to pay this amount in his plan with interest. In the end, the Residence value is far below the principal balance owed to Byline.

2

### C.    Discussion

The crux of the matter before the court is whether the Debtor can modify the rights of Byline in the Debtor's Residence. If the Debtor cannot modify the rights of Byline, the value of the Residence is not relevant as the Debtor's proposed plan cannot be confirmed. The Debtor, while not disputing that the 2503 S. 57th Court property is the Debtor's Residence, is trying to distinguish the prohibition against modifying the rights of a lender in a debtor's primary residence contained in section 1322(b)(2). The Debtor asserts that section 1322(b)(2) does not apply for two reasons: (1) at the time the loan was made, it was secured by the Residence and the Commercial Property, and (2) the loan documents include as security, personal property and, therefore, the loan is collateralized by more than just the primary residence.

Byline counters this argument by asserting that the Petition Date is the relevant date to make the determination of whether the anti-modification provisions of section 1322(b)(2) apply. Using the Petition Date eliminates the argument that the original collateral, which included the Commercial Property, allows the strip-down of Byline's lien on the Residence. Byline further argues that the inclusion of incidental personal property in its security interest cannot be used to circumvent the anti-modification prohibition of section 1322(b)(2).

### 1. Section 1322(b)(2)

Section 1322(b)(2) prohibits the modification of "a claim secured only by a security interest in real property that is the debtor's principal residence...." 11 U.S.C. § 1322(b)(2). A security interest, however, that is in property other than the debtor's principal residence may be subject to modification. Thus, the issue in this case is whether the Byline loan is a "commercial loan" and subject to modification or whether the loan only includes Debtor's primary residence. If this court uses the Petition Date as the proper time to determine the nature of the loan, the

3

claim may not be modified under Section 1322(b)(2), while it may be modified if the loan origination date is controlling.

A majority of courts have determined that the petition date is the appropriate date for determining whether the anti-modification provision of § 1322(b)(2) applies to a claim. *In re Landry*, 462 B.R. 317 (Bankr. D. Mas.2011). *see also In re Benafel*, 461 B.R. 581, (B.A.P. 9th Cir.2011) (holding that the determination of whether the debtor is using real property as his principal residence is made as of the petition date for the purposes of section 1322(b)(2)); *In re Abdelgadir*, 455 B.R. 896, (B.A.P. 9th Cir.2011) (same but construing section 1123(b)(5)); *In re Leigh*, 307 B.R. 324, 331–32 (Bankr.D.Mass.2004) (whether claim is secured by collateral in addition to debtor's principal residence is determined as of the petition date). This court agrees.

On the Petition Date, the Debtor retained only the Residence as Byline's lien had been released against the Commercial Property through a foreclosure. The fact that the Commercial Property was no longer part of the collateral base leaves the Debtor squarely in the prohibition of the anti-modification under section 1322(b)(2). *In re Amerson*, 143 B.R. 413 (Bankr. S.D. Miss. 1992) (release of lien against chapter 13 debtor's car prior to the filing of the petition left only the debtor's primary residence as security for the loan and thus, anti-modification benefit existed under section 1322(b)(2)).

Finally, Debtor contends that because the mortgage also grants a security interest in personal property related to the Residence[3], the anti-modification provision of section 1322(b)(2) is defeated. While the Bankruptcy Code is clear that if a security interest was granted in property other than the debtor's residence, section 1322(b)(2) might not apply, but if the security interest

---

[3] The Mortgage Document at page 2, attached as part of Group Exhibit A to Dkt. No. 27 states that the grant of security interest includes "the assignment of rents and the security interest in the Rents and personal property".

4

granted as part of a mortgage in the debtor's principal residence also grants an interest in rents or other "incidental property", the anti-modification provision is not impacted.

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") applicable to bankruptcy cases filed on or after October 17, 2005 added the following definitions:

(13A) The term "debtor's principal residence"—

(A) Means a residential structure, if used as the principal residence by the debtor, including *incidental property,* without regard to whether the structure is attached to real property . . .

BAPCPA also added section 101(27B) which defines "incidental property":

(27B) The term "incidental property" means, with respect to a debtor's principal residence—

(A) Property commonly conveyed with a principal residence in the area where the real property is located;

(B) All easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and

(C) All replacements or additions.

Thus, under the express terms of these provisions added by BAPCPA, it appears that a lender does not lose its section 1322(b)(2) protection by taking a security interest in any of the listed "incidental property." *In re Inglis*, 481 B.R. 480, 482-3 (Bankr. S.D. Ind. 2012). The Debtor has not pointed to any personal property other than "incidental property" that would otherwise destroy the anti-modification provision of section 1322(b)(2). Thus, the Debtor may not modify the rights of Byline. The Debtor's proposed plan is not confirmable.

5

## 2. Modification of the Stay

Section 362 states that the automatic stay may be modified for property when the debtor does not have any equity in the property and the property is not necessary for reorganization. 11 U.S.C. Section 362(d). Both parties acknowledge that Debtor holds no equity in the property.[4] The only question remains is whether the property is necessary for reorganization. In order to successfully demonstrate that a successful reorganization is possible, the Debtor must cure the arrearage owed to Byline and the Debtor has not done so in his proposed plan. See *In re Stincic*, 559 B.R. 890 (Bankr. W.D. Wis. 2016)(holding that debtor failed to satisfy burden of showing that property was necessary to any reorganization reasonably in prospect, where debtor did not have the ability, based on his earnings, to cure his more than $56,000 arrearage on mortgage debt even over the full term of 60-month plan.)

In this case, Debtor has not satisfied his burden. The only method of potential reorganization presented to the court was by modifying Byline Bank's secured claim. As discussed above, Debtor is not permitted to avoid the anti-modification provisions of Section 1322(b)(2). The court remains unconvinced that there is a reasonable possibility that Debtor can successfully reorganize. As a result, Byline Bank's motion to modify the stay is granted. Byline has also requested that this court dismiss the case.

---

[4] Byline Bank's appraisal, Case No. 16ap00644, Dkt.5, Ex. C and Debtor's plan in the instant case, Dkt. 18, p.3.

## D. Conclusion

Confirmation of the proposed plan is denied for the reasons discussed above. Byline's Motion to Modify the Automatic Stay is granted. A status on the future of this case is continued to March 1, 2017 at 10:30.

ENTER:

*/s/ Deborah A. Thorne*
Deborah L. Thorne
United States Bankruptcy Judge

Dated: February 9, 2017

## CERTIFICATE OF SERVICE

I certify that I caused copies of the attached Memorandum Opinion to be served on all persons on the service list by first class U.S. mail in properly addressed envelopes with postage prepaid on February 9, 2017.

_____
Jodi Bennett
Judicial Assistant

SERVICE LIST

*Debtor*
Andres Hueramo
2503 S. 57th Court
Cicero, IL 60804

*Counsel for the Debtor*
J Kevin Benjamin
Theresa S. Benjamin
Benjamin & Brand
1016 W. Jackson Blvd.
Chicago, IL 60607

*U.S. Trustee*
Patrick Layng
Office of the U.S. Trustee, Region 11
219 S. Dearborn, Room 873
Chicago, IL 60604

*Chapter 13 Trustee*
Marilyn O. Marshall
224 S. Michigan Avenue, Suite 800
Chicago, IL 60604

*Creditor*
Byline Bank f/k/a North Community Bank
c/o Sachin P. Shah
Chuhak & Tecson, P.C.
30 S. Wacker Drive #2600
Chicago, IL 60606